**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| DONALD STILTON, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-757 (RMB) |
| | : | |
| v. | : | |
| | : | |
| ADMINISTRATOR ALBINO, | : | **OPINION** |
| et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**APPEARANCES:**

DONALD STILTON, Plaintiff pro se
2261 Church Road
Toms River, New Jersey 08753

**BUMB**, District Judge

Plaintiff, Donald Stilton, a convicted state inmate confined at the Northern State Prison in Newark, New Jersey, at the time he submitted his Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, and absence of three strikes under 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) and (b), and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

Plaintiff, Donald Stilton ("Stilton"), brings this civil action against the following defendants: Administrator Albino; Captain St. Hill; Lieutenant ("Lt.") Sheen; Assistant Administrator Warren; Lt. McCrae; Lt. Buzynski; Lt. Rossier; Sergeant ("Sgt.") Whilden; Sgt. Sharp-Hatcher; Sgt. Heaton; Sgt. Ericcson; Sgt. Bailey; Hearing Officer Ruggiero; Psychiatrist John Doe #1; Psychologist Jane Doe #1; Officer Shearburn at Bayside State Prison; Officer Santiago; Officer Louis; Officer Collier; Officer Whilden; Officer Buzunski; Officer Chance; Officer Pansa; Officer Bailey; Officer Karper; Officer Sutherland; and "such others who may be later identified." (Complaint, Caption).  All named defendants are employed by the New Jersey Department of Corrections ("NJDOC") and work at either Bayside State Prison ("BSP") or Southern State Correctional Facility ("SSCF").  (Compl., Parties at ¶ II).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

2

Stilton first alleges that, on or about December 9, 2009, he was transferred to BSP with his personal property.  Upon arrival, Stilton was placed in a holding cell and Officer Shearburn took plaintiff's property.  Shearburn was aware that Stilton had been banned from BSP because of a previous assault on a supervisor, Lt. Dore, so Shearburn called a sergeant and two general assignment officers to have plaintiff placed in temporary close custody in detention.  Shearburn purportedly told Stilton while he was in the holding cell that Stilton would never see his personal property again.  (Compl., Section IV at ¶¶ 1-5).

Two days later, on December 11, 2009, Stilton was transferred to SSCF.  His property could not be found and was not transported with plaintiff.  Stilton filed an inmate remedy form against Shearburn with respect to his lost personal property. After a response indicating that his property was never received at BSP, Stilton filed a claim for lost property.  (Compl., Section IV at ¶¶ 6-9).

Stilton pursued his lost property claim with the Department of Public Advocate, Inmate Ombudsman, and Commissioner George Hayman, to no avail.  Stilton claims that the loss of his property resulted in the case of <u>Stilton v. Miekie</u> being dismissed.  He also claims that the loss of his property prevented him from filing other cases.  (Compl., Section IV at ¶¶ 10-14).

3

On January 19, 2010, Stilton was scheduled for a daily
dressing change for recent surgery on his right arm.  He arrived
at the medical infirmary at 7:10 a.m. and was subjected to
harassing comments and name-calling by defendant Officer Whilden.
Stilton signed a medical refusal because of the harassment.  He
went to the infirmary the next day, January 20, 2010, for a
dressing change, and again, Whilden started with the harassment.
Whilden made plaintiff wait for more than an hour, allowing other
inmates to go before Stilton.  Whilden also was smoking a
cigarette in the infirmary and blew smoke into plaintiff's face.
Whilden began calling Stilton vulgar names.  When Stilton tried
to walk away, Whilden assaulted plaintiff by pushing him about
the face and body.  Stilton left to see a supervisor to make a
complaint against Whilden.  Stilton was directed by Sgt. Gabbon
to return to the infirmary and a supervisor would meet him there.
Stilton returned to the infirmary and waited but no one came to
take his complaint.  Stilton had to return to his unit at 10:00
a.m. for a "stand-up" count.  (<u>Id</u>., ¶¶ 15-25).

Stilton filed a grievance against Whilden on January 20,
2010.  Stilton was interviewed by Captain Hill and Lt. Rossier
about the alleged incident, but he complains that no action was
taken against Whilden.  Stilton complains that Hill and Rossier
covered up the incident because Whilden was planning to retire
soon.  (<u>Id</u>., ¶¶ 26-30).

4

On January 21, 2010, Stilton arrived at the infirmary for a 7:00 a.m. dressing change.  Stilton told Officer Whilden and Officer Collier that he had a 9:00 a.m. appointment in the academic building.  However, plaintiff sat for almost two hours while Whilden allowed other inmates to see the nurse and continued to make harassing statements to Stilton.  Stilton asked Collier if he could sign a medical refusal and have his I.D. card returned so he could leave for his 9:00 a.m. appointment, but was refused.  Then Officer Whilden began yelling at plaintiff and made all the inmates in the infirmary leave, while he called a supervisor, Sgt. Whilden,[1] to come and take plaintiff's complaint.  (Id., ¶¶ 31-34).

Sgt. Whilden arrived at the infirmary while plaintiff was sitting on a bench.  Stilton explained to the sergeant what had occurred.  Both Sgt. Whilden and Officer Whilden stepped out for a moment, and when they returned, they placed Stilton in handcuffs and led him off to disciplinary detention.  On January 22, 2010, Stilton was served with a disciplinary report, charging him with the following disciplinary infractions: (1) refusing a direct order, and (2) conduct which disrupts the orderly running of the institution.  Stilton alleges that these charges are false.  (Id., ¶¶ 35-42).

---

[1]  It appears that there are two separate defendants named Whilden, one being a correctional officer and the other a sergeant at the Northern State Prison.

5

Stilton pled not guilty to the charges.  He admits that he received a disciplinary hearing, an inmate representative and an opportunity to confront the witnesses against him.  He states that he had prepared questions, which the hearing officer asked the witnesses.  Stilton also alleges that the hearing officer, Ruggiero, told plaintiff to plead guilty and he would impose lesser sanctions.  Stilton refused to plead guilty, and contends that Sgt. Whilden gave conflicting testimony that showed that plaintiff was not guilty of the disciplinary charges.  Ruggiero told plaintiff to write a summary of the evidence.  Nevertheless, Ruggiero found plaintiff guilty of the disciplinary charges and sanctioned plaintiff to 30 days disciplinary detention, 30 days loss of recreation privileges, 365 days of administrative segregation, and 210 days loss of commutation time.  Stilton admits that Ruggiero found Sgt. Whilden's testimony not credible, but Ruggiero still found that there was sufficient evidence to show that plaintiff was guilty of the disciplinary charges. Stilton filed an administrative appeal on February 11, 2010, and sought a re-investigation of the incident.  (Id., ¶¶ 43-59).

Stilton further alleges that Administrator Albino and Assistant Administrator Warren had an opportunity to review the appeal but denied same, upholding Ruggiero's findings and sanctions imposed.  Stilton claims that denial of his administrative appeal protects Whilden and deprives plaintiff of his constitutional rights.  (Id., ¶¶ 60-62).

6

Stilton next alleges that, on January 23, 2010, he was handcuffed behind his back and maced for no reason by Lt. Sheen. Sgt. Ericcson then proceeded to punch plaintiff about his face and body, and kick him in his right leg, causing a laceration on his calf.  Ericcson then threatened plaintiff to keep quiet or Ericcson would come back and have plaintiff beaten badly. Stilton states that he requested medical attention for his injuries from this incident, but was denied.  He says that he remained in the infirmary, almost naked, from January 23, 2010 to January 27, 2010.  (Id., ¶¶ 63-68).

Stilton also alleges that for five days from January 22, 2010 to January 27, 2010, he had no mattress, sheets or blankets in a cold, unsanitary cell.  He also was left in his underclothes, and was denied showers, hygiene supplies, and toilet paper.  Several officers did provide plaintiff with these items he was entitled to on January 26, 2010.  (Id., ¶¶ 69-70).

Stilton claims that he was denied his legal papers and Bible from his personal property while he was in detention from January 21, 2010 through February 1, 2010.  He states that without his legal documents, he was prejudiced in his pending court cases in violation of his right to access the courts.  Stilton also complains that he did not have access to his word processor when he was placed in detention on January 21, 2010.  (Id., ¶¶ 71-82).

Stilton states that he had written numerous letters to Administrator Albino, Captain St. Hill and Sgt. Heaton,

complaining about all of the above referenced grievances, but has not received any response or action from these officials to redress the alleged misconduct and violations.  (Id., ¶¶ 83-88).

Stilton asserts that the above actions and misconduct by all of the named defendants violate his First, Sixth, Eighth and Fourteenth Amendment rights.  He seeks an unspecified amount of punitive and compensatory damages against defendants, as well as preliminary and permanent injunctive relief prohibiting defendants from harming him.  Stilton also seeks criminal prosecution against these defendants for violating his civil rights, and asks that the defendants be referred for internal disciplinary action.  (Compl., at Sections V. Causes of Action and VI. Reliefs).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and

1915A, as plaintiff is proceeding in forma pauperis and is a
convicted prisoner seeking redress against governmental
officials.

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94
(2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Recently, the Supreme Court revised the standard for summary
dismissal of a Complaint that fails to state a claim in Ashcroft
v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme
Court was whether Iqbal's civil rights complaint adequately

9

alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Id</u>. at 1948.  The Supreme Court's ruling in

<u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the

allegations of his complaint are plausible.  <u>Id</u>. at 1949-50; <u>see

also</u> <u>Twombly</u>, 505 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>,

578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that <u>Iqbal</u> provides

the "final nail-in-the-coffin for the 'no set of facts' standard"

set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[3] that

---

[3]  In <u>Conley</u>, a district court was permitted to summarily
dismiss a complaint for failure to state a claim only if "it
appear[ed] beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him to relief.
<u>Id</u>., 355 U.S. at 45-46.  Under this "no set of facts" standard, a
complaint could effectively survive a motion to dismiss so long
as it contained a bare recitation of the claim's legal elements.

applied to federal complaints before Twombly.  Fowler, 578 F.3d

at 210.  The Third Circuit now requires that a district court

must conduct the two-part analysis set forth in Iqbal when

presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this

pro se pleading must be construed liberally in favor of

Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89

(2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to

amend, unless it finds bad faith, undue delay, prejudice or

futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-

111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.

2000).

III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging a violation of his civil rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  ANALYSIS

A.  First Amendment Violations

Stilton alleges that he was denied access to his legal documents, his word processor, and his Bible, all of which were his personal property, while he was in detention from January 21, 2010 through February 1, 2010.  He claims these actions by defendants violated his First Amendment rights.

13

1.  *Bible*

The First Amendment, made applicable to the states by the Fourteenth Amendment, <u>Cantwell v. Connecticut</u>, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Here, Stilton appears to allege that the restriction placed on him while in disciplinary detention regarding his access to his personal property, including his Bible, violates his First Amendment right to free religious exercise.

Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." <u>Id</u>. at 547. Thus, to state a First Amendment claim, an inmate must establish allegations that indicate a constitutional violation and show that the government has no legitimate penological interest in the restrictions it imposes. <u>See</u> <u>Lewis</u>, 518 U.S. at 361; <u>Bell v. Wolfish</u>, 441 U.S. at 551-52.

To establish his denial of religious freedom claim in this instance, Stilton must demonstrate that the restriction on religious practice was not reasonably related to a legitimate, penological interest. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342,

14

349-50 (1987); <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  This reasonableness standard involves the examination of the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at <u>de minimis</u> cost to valid penological interests.  <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 415-18 (1989); <u>Turner</u>, 482 U.S. at 89-91.

In this case, Stilton's bare allegations are not sufficient to state a First Amendment free exercise claim.  He fails to allege that he was restricted from participation in prayer or access to another Bible other than his own personal copy. Stilton also does not indicate how this minimal restriction imposed while he was in disciplinary detention actually prevented him from practicing his faith.  Thus, this singular allegation of a wrongful act does not rise to the level of a violation of constitutional dimension.  Therefore, the Court will dismiss this claim accordingly for failure to state a claim upon which relief may be granted.

15

2.   *Legal Documents*

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[4] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'"

_____

[4]   The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting*
Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental
constitutional right of access to the courts requires prison
authorities to assist inmates in the preparation and filing of
meaningful legal papers by providing prisoners with adequate law
libraries or adequate assistance from persons trained in the
law."  The right of access to the courts is not, however,
unlimited.  "The tools [that Bounds] requires to be provided are
those that the inmates need in order to attack their sentences,
directly or collaterally, and in order to challenge the
conditions of their confinement.  Impairment of any other
litigating capacity is simply one of the incidental (and
perfectly constitutional) consequences of conviction and
incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996)
(emphasis in original).  Similarly, a pretrial detainee has a
right of access to the courts with respect to legal assistance
and participation in one's own defense against pending criminal
charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th
Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31,
2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th
Cir. 2000) (pretrial detainee who rejects an offer of court-
appointed counsel in satisfaction of the Sixth Amendment right to
counsel has no alternative right to access to a law library);
Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998)

17

(same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

Here, Stilton fails to allege any actual injury as a result of the alleged denial of access to his legal documents for the short period of time he was in disciplinary detention.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action.  Furthermore, Stilton does not articulate how the alleged denial of access to his legal documents hindered his efforts to either pursue this claim or other court actions, which he did not identify in his pleadings.  Therefore, his claim alleging denial of access to the courts based on an alleged

denial of access to his legal documents and word processor will be dismissed without prejudice for failure to state a claim at this time.

B.   <u>Deprivation of Property Claim</u>

The Fourteenth Amendment provides, in pertinent part here, that the State may not "deprive any person of life, liberty, or property, without due process of law[.]"  The "due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property.  <u>Zappan v. Pennsylvania Board of Probation and Parole</u>, 152 Fed. Appx. 211, 220 (3d Cir. 2005)("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.").  Hence, to establish a prima facie case of a procedural due process violation, a plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or property interest, (2) state action, and (3) constitutionally inadequate process.  <u>See Rusnak v. Williams</u>, 44 Fed. Appx. 555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state sponsored-deprivation of a protected interest in life, liberty or property.  If such an interest has been or will be deprived, procedural due process requires that the governmental unit provide the individual with notice and a reasonable opportunity to be heard.")(citation omitted).

To have a property interest, Stilton must demonstrate "more than an abstract need or desire for it. ... He must, instead, have a legitimate claim of entitlement to it" under state or federal law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). For present purposes, a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause of which he has been deprived and, if so, the second question is whether the process afforded the complaining party to deprive him of that interest comported with constitutional requirements. Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).

Here, Stilton alleges that his personal property was either lost or confiscated upon his transfer to Bayside State Prison and Southern State Correctional Facility. He filed a lost property claim, but to no avail. He claims that the loss of this property resulted in the dismissal of one of his court actions, Stilton v. Miekie, however, he does not indicate whether the court action is related to an appeal of his criminal conviction or a conditions of confinement claim. Stilton also does not identify where the court case is venued.

To the extent that Stilton was deprived of personal property as a result of his transfer to BSP and SSCF, he has a post-deprivation remedy. Property loss caused by the intentional acts of government officials does not give rise to a procedural due

20

process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law.  See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman, 712 F.2d at 856.[5]  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  See  Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).

Therefore, any deprivation of property claim asserted by Stilton here will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

C.  False Disciplinary Charges

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may

---

[5]  In Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), the Supreme Court explained, however, that post-deprivation remedies do not satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to established state procedure rather than through random, unauthorized action.  455 U.S. at 435-36.  But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)(citing United States v. James Daneil Good Real Property, 510 U.S. 43, 53 (1993))(in "extraordinary situations" such as routine deduction of fees from a prisoner's account even without authorization, post-deprivation remedies may be adequate).

not be rescinded without certain procedural protections.  U.S.
CONST. amend. XIV.  In Wolff, the Supreme Court set forth the
requirements of due process in prison disciplinary hearings.  An
inmate is entitled to (1) written notice of the charges and no
less than 24 hours to marshal the facts and prepare a defense for
an appearance at the disciplinary hearing; (2) a written
statement by the fact finder as to the evidence relied on and the
reasons for the disciplinary action; and (3) an opportunity "to
call witnesses and present documentary evidence in his defense
when to do so will not be unduly hazardous to institutional
safety or correctional goals."  Wolff v. McDonnell, 418 U.S. 539
(1974) Wolff, 418 U.S. at 563-71.  An inmate is also entitled to
an inmate representative in some cases, and a written decision by
the factfinder as to evidence relied upon and findings.  See Von
Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418
U.S. at 563-72).  However, in Wolff, the Supreme Court held that,
while prisoners retain certain basic constitutional rights,
including procedural due process protections, prison disciplinary
hearings are not part of criminal prosecution, and an inmate's
rights at such hearings may be curtailed by the demands and
realities of the prison environment.  Id. at 556-57; Young v.
Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, Stilton admits that he was given the opportunity to
call and question witnesses, as well as present documentary
evidence.  In fact, he does not allege any procedural due process

violation with respect to his prison disciplinary proceedings, except to say that he was found guilty despite contradictory testimony which he contends proves him innocent.

Thus, it appears to this Court, from the allegations in the Complaint, that Stilton actually is challenging the disciplinary charges and findings as untrue.  To the extent that Stilton is challenging the result of the disciplinary proceedings in alleging that the disciplinary charge is false, such claim must be dismissed.  The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally

protected liberty interest ... where procedural due process protections were provided").

Moreover, Stilton has not exhausted his administrative and state court remedies challenging the disciplinary finding, and therefore, he is precluded at this time from asserting such a claim here.  Therefore, Stilton's Fourteenth Amendment claim regarding his disciplinary proceedings and alleged false disciplinary charges will be dismissed without prejudice at this time.

D.   Harassment Claim

As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be tolerated by a civilized society." Hudson v. Palmer, 468 U.S. 517, 528 (1984).  The Eighth Amendment protects prisoners against calculated harassment.[6]  Id. at 530. Generally, however, mere verbal harassment does not give rise to a constitutional violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)(taunts and threats are not an Eighth Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987)(vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822

---

[6]  This Court acknowledges that plaintiff appears to have been a pretrial detainee at the time of the alleged incident, and therefore, the Eighth Amendment standard addressed here acts only as a floor for a due process inquiry into the alleged claim of harassment by certain correctional officers.

F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D.Pa. 1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988).  Racially discriminatory statements, racial slurs and epithets, without more, also do not establish liability under § 1983.  See Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (verbal abuse directed at religious and ethnic background does not state a cognizable constitutional violation); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999)("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); Haussman v. Fergus, 894 F. Supp. 142, 149 (S.D.N.Y. 1995); Prisoners' Legal Ass'n, 822 F. Supp. at 187-189 & n. 3 (corrections officer's use of racial slurs did not amount to constitutional violation); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y.1989), aff'd, 891 F.2d 278 (2d Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d 1126 (6th Cir.1988). Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(defendant laughed at prisoner and threatened to hang him).  However, threatening language coupled with the threatening use of a weapon and outrageous conduct by prison personnel may indicate a constitutional deprivation.  Douglas, 684 F. Supp. at 398

(brandishing a butcher knife in close proximity to prisoner and threatening to kill him may amount to a constitutional violation); see also Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992)(gun was put to prisoner's head); Burton v. Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot prisoner).

Here, Stilton alleges that Officer Whilden verbally harassed him for several days when plaintiff arrived at the medical infirmary for his daily dressing change.  He states that Whilden would call him vulgar names, blow cigarette smoke in his face, and allow other inmates to be treated before plaintiff.  The harassment prompted plaintiff to refuse medical treatment for two days.  The Court finds that these allegations of verbal harassment do not rise to the level of constitutionally impermissible conduct as set forth above.  Therefore, plaintiff's Eighth Amendment harassment claim will be dismissed for failure to state a claim.

E.   Conditions of Confinement Claim

Stilton next alleges that for five days, he was not given a mattress, blanket, bed linen, showers, hygiene products, or toilet paper, and was left in his underclothes while he was on medical and psychiatric close watch in the infirmary pursuant to disciplinary charges.  Stilton also claims that he did not receive medical attention after he was assaulted by Sgt. Ericcson, although plaintiff admits that he was confined in the infirmary under close medical watch.

26

"The Eighth Amendment to the United States Constitution prohibits any punishment which violates civilized standards and concepts of humanity and decency." Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), superseded on other grounds by 42 U.S.C. § 1997e(a).  A prisoner does not lose this protection despite a prison sentence, for "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  In order to establish a claim under the Eighth Amendment based on conditions of confinement, the Supreme Court has set forth a two-part test with objective ("Was the deprivation sufficiently serious?") and subjective ("Did the officials act with a sufficiently culpable state of mind?") components.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective element requires a prisoner to show that his living conditions amounted to a "serious deprivation of basic human needs." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The subjective element demands that the prisoner demonstrate "that prison officials acted or failed to act with deliberate indifference." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

With regards to the objective prong, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 347.  "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against

society." Id. Conditions of confinement for convicted criminals are unconstitutional only when they "deprive inmates of the minimal civilized measure of life's necessities." Id. Indeed, under the Due Process Clause, as well as the Eighth Amendment, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." Helling v. McKinney, 509 U.S. 25, 32 (1993).

In this case, Stilton's complaints about the conditions of his confinement were of such short duration, a matter of several days, that they fail to rise to the level of a constitutional deprivation under the Eighth Amendment, i.e., they are not sufficient to state a claim that he has been deprived of life's necessities for an unreasonable period of time. Indeed, the restriction on bedding and other hygiene products appear to relate to his confinement under close medical and psychiatric watch, as admitted by plaintiff, and consequently, appear to be based on safety and security concerns rather than any deliberate intention to harm plaintiff. Therefore, plaintiff's Eighth Amendment conditions of confinement claim will be dismissed for failure to state a claim.

F.  Excessive Force Claim

Stilton also alleges that defendant Ericcson assaulted him without provocation while plaintiff was handcuffed behind his back. Stilton's allegations suggest that he is asserting that defendant Ericcson used excessive force against him in violation

28

of the Eighth Amendment because he is a convicted prisoner.  <u>See</u>
<u>Graham v. Connor</u>, 490 U.S. 386, 392-394 (1989)(cases involving
the use of force against convicted individuals are examined under
the Eighth Amendment's proscription against cruel and unusual
punishment).

    "The Eighth Amendment, in only three words, imposes the
constitutional limitation upon punishments:  they cannot be
'cruel and unusual.'"  <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345
(1981).  The Eighth Amendment prohibits conditions which involve
the unnecessary and wanton infliction of pain or are grossly
disproportionate to the severity of the crime warranting
imprisonment.  <u>Id.</u> at 347.  The cruel and unusual punishment
standard is not static, but is measured by "the evolving
standards of decency that mark the progress of a maturing
society."  <u>Id.</u> at 346 (quoting <u>Trop v. Dulles</u>, 356 U.S. 86, 101
(1956)).  To state a claim under the Eighth Amendment, an inmate
must satisfy an objective element and a subjective element.
<u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

    The objective element questions whether the deprivation of a
basic human need is sufficiently serious; the subjective
component asks whether the officials acted with a sufficiently
culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298
(1991).  The objective component is contextual and responsive to
"'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503
U.S. 1, 8 (1992).  The subjective component follows from the

principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

30

> (1) "the need of the application of force"; (2) "the
> relationship between the need and the amount of force
> that was used"; (3) "the extent of injury inflicted";
> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force

is "excessive" and will give rise to the level of a

constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear

that not "every malevolent touch by a prison guard gives rise to

a federal cause of action").  Therefore, "[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."

Id. at 9-10.

Here, the allegations of the Complaint, if true, may suggest

a claim that defendant Ericcson acted in a malicious and

excessive manner.  Stilton alleges that he did not provoke an

assault, and that he was handcuffed behind his back when he was

maced and punched and kicked about his head, body and legs.

These allegations also may suggest that plaintiff sustained more

than a de minimis injury.[7]  Therefore, this claim of excessive

---

[7]  "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;
not by the resulting injuries." Smith v. Mensinger, 293 F.3d
641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing
an excessive force claim is whether the force was applied
maliciously and sadistically to cause harm.  Id. at 649; Brooks,
204 F.3d at 106.  Otherwise, an inmate "could constitutionally be
attacked for the sole purpose of causing pain as long as the

force in violation of the Eighth Amendment will be allowed to proceed at this time against the named defendant Ericcson.

G.   Failure to File Criminal Charges Claim

Stilton also seeks to have federal criminal charges issued against defendants for violating his civil rights.  This Court finds that any such claim alleging failure to prosecute or file criminal charges is not cognizable under any federal law, specifically, 42 U.S.C. § 1983.  See Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").  See also Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985); United States v. General Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir.1987).

Therefore, this claim will be dismissed with prejudice, in its entirety, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

H.   Motion for Preliminary Injunction

Stilton also seeks preliminary injunctive relief.  To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3)

_____

blows were inflicted in a manner that resulted" in injuries that were de minimis.  Id.

granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." <u>Maldonado v. Houston</u>, 157 F.3d 179, 184 (3d Cir. 1998), <u>cert. denied</u>, 526 U.S. 1130 (1999)(as to a preliminary injunction); <u>see also</u> <u>Ballas v. Tedesco</u>, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief. <u>Opticians Ass'n of America v. Independent Opticians of America</u>, 920 F.2d 187 (3d Cir. 1990).  The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  <u>See</u> <u>University of Texas v. Camenisch</u>, 451 U.S. 390, 392 (1981).

Here, most of plaintiff's claims asserted in this Complaint, with the exception of his excessive force claim, are being dismissed for failure to state a claim.  Accordingly, Stilton has not alleged facts sufficient to satisfy the first requirement that he may be likely to succeed on the merits.  Moreover, Stilton fails to articulate irreparable harm, and thus, cannot satisfy the second mandatory requirement.  Indeed, with respect to his claims for injunctive relief regarding the conditions of his confinement and his concern about retribution from defendants while he remains incarcerated at SSCF are now moot since Stilton has been released from prison on or about April 15, 2010.

Therefore, because Stilton is unable to establish all four factors necessary for preliminary injunctive relief as required, his application for preliminary injunctive relief will be denied.

## IV.   CONCLUSION

For the reasons set forth above, plaintiff's claims asserting First Amendment violations of denial of access to the courts and denial of free religious exercise, will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Likewise, plaintiff's Eighth Amendment conditions of confinement and harassment claims, his Fourteenth Amendment deprivation of property, disciplinary due process and false disciplinary charges claims, and his claims seeking imposition of criminal charges and disciplinary action against the officer defendants, will be dismissed with prejudice, in its entirety, as against all named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  However, plaintiff's claim alleging excessive force in violation of the Eighth Amendment will be allowed to proceed at this time as against defendant Sgt. Ericcson.  Finally, plaintiff's application for a temporary restraining order or preliminary injunction, as well as permanent injunctive relief,

will be denied as moot, because plaintiff is no longer confined
in prison.  An appropriate Order follows.


                                  s/Renée Marie Bumb
                                  RENÉE MARIE BUMB
                                  United States District Judge

Dated: November 23, 2010